UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PABLO PARRILLA, JR.,

        Plaintiff,

v.                                                               Case No. 17-C-841

JOSEPH BEAHM, *et al.*,

        Defendants.

## DECISION AND ORDER GRANTING SUMMARY JUDGMENT

        Plaintiff Pablo Parrilla, Jr., an inmate currently serving a state prison sentence at Waupun Correctional Institution (WCI) and representing himself, filed this action under 42 U.S.C. § 1983, alleging that the defendants violated his constitutional rights. Parrilla primarily alleges that Defendants Joseph Beahm, Derek Schouten, and Megan Rodriguez harassed him in a manner that constituted cruel and unusual punishment by allowing the small trap door on his cell door to open in a manner that caused a loud sound, thereby exacerbating his mental illnesses. He further alleges that Beahm retaliated against him for filing complaints regarding Beahm's conduct, and that Defendant Shane Waller also subjected him to cruel and unusual punishment by failing to intervene to protect him from the alleged actions of the other defendants. This matter comes before the court on the defendants' motion for summary judgment. ECF No. 38. Also before the court is Parrilla's motion in opposition to the defendants' motion for summary judgment (ECF No. 46), his motion for clarification in response to the defendant's reply in support of their motion for summary judgment (ECF No. 61), and his motion to supplement the record (ECF No. 62). For the reasons stated

below, the defendants' motion for summary judgment will be granted, and Parrilla's motions will all be denied.

## BACKGROUND

At all times relevant to this lawsuit, Parrilla was an inmate confined at WCI, where Defendants Joseph Beahm and Megan Rodriguez were employed as correctional officers, Defendant Derek Schouten was employed as a correctional sergeant, and Defendant Shane Waller was employed as a lieutenant. Defs.' Proposed Findings of Fact (DPFOF) ¶¶ 1–4, ECF No. 40. Parrilla was housed in the Restrictive Housing Unit (RHU) at WCI between October 2012 and November 2015. *Id.* ¶ 9. Cell doors in the RHU contain a small trap door, which is normally locked and can be opened by inserting and turning a key, which causes the trap to fall open. *Id.* ¶ 14. The trap door makes noise when it falls open. *Id.* ¶ 17. Although the defendants assert that there is no standard procedure for correctional officers to open these trap doors and that some officers catch the door to break its fall, Parrilla disputes this, asserting that he was told that the proper procedure is for all officers to catch the trap and break its fall. *Id.* ¶¶ 13, 15; *see* ECF No. 49 ¶ 81.

Meal delivery in the RHU is normally carried out by two security staff members. DPFOF ¶ 11. One officer opens the trap door on the inmate's cell then hands a tray to the inmate, and the second officer hands out fruit and milk before closing the trap door. *Id.* Later, two staff members normally return to collect the trays. *Id.* ¶ 12. The first staff member opens the trap door and retrieves the tray from the inmate; the second pushes a garbage can and closes the trap door. *Id.* ¶ 12. Beahm, Rodriguez, and Schouten all deliver trays to inmates on the RHU as part of their normal job duties, meaning they open and close the food traps on inmates' cells. *Id.* ¶ 22. Parrilla contends that Beahm recklessly dropped his food trap on 43 occasions between April and November

2

2015, that Rodriguez recklessly dropped his food trap on 7 occasions between August and October 2015, and that Schouten recklessly dropped his food trap on 5 occasions between July and August 2015. *Id.* ¶¶ 18–20; ECF No. 55 at 1.

The parties dispute whether Parrilla made Beahm, Rodriguez, and Schouten aware that the loud manner in which they opened his foot trap could affect his mental health. DPFOF ¶ 27; *see* ECF No. 49 ¶¶ 10, 21, 29. Contact notes by a psychologist in WCI's Psychological Services Unit (PSU) from August and November 2015 describe Parrilla as having a diagnosis of antisocial personality disorder and a provisional diagnosis of PTSD, and notes from July 2015 suggest that the provisional PTSD diagnosis replaced a provisional anxiety disorder diagnosis. ECF No. 42-1 at 5–7. Parilla contends that the sound of the trap door opening was like a gunshot that gave him flashbacks of near-death experiences. ECF No. 49 ¶ 85.

Waller first became aware of Parrilla's complaint that the other defendants were opening his food trap in a loud manner when he was contacted by the Institution Complaint Examiner (ICE) in July 2015. DPFOF ¶ 44. After reviewing videos depicting officers delivering meals to inmates on Parrilla's housing unit, Waller determined that the correctional officers were not opening or closing the trap door on Parrilla's cell any differently than the trap doors on other inmates' cells. *Id.* ¶¶ 45–46; *see also* ECF No. 55 at 13.

In support of their motion for summary judgment, the defendants have submitted two of the videos that Waller reviewed, one from June 14, 2015, and the other from June 15, 2015. ECF Nos. 45-1, 45-2. Parrilla alleges that Beahm dropped his trap in a loud manner on both of those dates but does not allege that either Rodriguez or Schouten did so on those dates. ECF No. 55 at 1. The June 14, 2015, video depicts the breakfast, lunch, and dinner passes for that day. ECF

3

No. 45-1. According to Waller, Beahm is the officer depicted in the video who delivers meal trays to the housing unit for breakfast and lunch, as well as the officer who picks them up after lunch. ECF No. 45 ¶ 9. Although there is no sound on the video and it is not clear from the video which cell belongs to Parrilla, Beahm appears to unlock all of the food traps in approximately the same manner. ECF No. 45-1 at 2:05–2:45, 3:49–4:50, 7:55–9:00. The video also depicts Schouten closing each inmate's food trap in a consistent manner when delivering milk and food during the dinner pass. *Id.* at 12:55–13:59; *see also* ECF No. 45 ¶ 10. Similarly, the June 15 video depicts Beahm lowering and raising the trap doors in a consistent manner for all inmates while delivering and retrieving trays for breakfast and lunch, and it depicts Rodriguez closing the trap in a consistent manner for all cells when passing out milk and fruit at dinner and when subsequently collecting dinner trays. ECF No. 45-2 at 1:04–2:07, 3:46–4:55, 6:50–7:55, 9:45–10:35; 14:07–14:46; 16:40–17:36; *see also* ECF No. 45 ¶¶ 12–13.

After Parrilla was released from the RHU in November 2015, Beahm wrote him a conduct report in January 2016 for yelling threatening and disrespectful statements to him. DPFOF ¶ 52; *see also* ECF No. 41-1 at 6–7. Beahm gave the conduct report to a supervisor to review, and the security director subsequently permitted the conduct report to proceed as a major offense. DPFOF ¶¶ 53–56, 58. At a due process hearing regarding the conduct report on February 2, 2016, Parrilla admitted that he "was heated" on that occasion but denied using the particular threatening and disrespectful phrases recorded in Beahm's conduct report. *Id.* ¶ 59; *see also* ECF No. 41-1 at 11. The hearing officer found Parrilla guilty and as discipline imposed 30 days of cell confinement and 30 days loss of electronics. DPFOF ¶ 60. Additional factual material will be set forth as necessary in the analysis below.

4

**LEGAL STANDARD**

Summary judgment should be granted when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, the time and expense of the parties and the court should not be wasted on a trial when there are no material facts in dispute, one party is entitled to judgment on those facts, and thus there is nothing to try. In deciding a motion for summary judgment, all reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoted source and internal quotation marks omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* A court may properly enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**ANALYSIS**

**I. Motion to Clarify**

At the outset, the court must address the scope of the matters that remain at issue in this case. In response to the defendants' reply brief in support of their motion for summary judgment, Parrilla filed a motion to clarify the claims that he raises is this suit. ECF No. 61. The defendants' motion for summary judgment focuses entirely on Parrilla's claims that the defendants' actions

dropping his food trap constituted harassment that violated the Eighth Amendment, that Waller failed to intervene to prevent the other defendants' actions, and that Beahm later filed a retaliatory conduct report against him. In their reply brief in support of their motion, the defendants argue that much of Parrilla's response in opposition to summary judgment improperly focuses on claims dismissed at screening regarding alleged harassment by Beahm in the form of cutting short Parilla's showers and skipping him during meal and linen distribution. When screening the complaint, the court observed that, "[w]hile no doubt a nuisance, none of these actions are alleged to have occurred with a frequency such that they would add up to cruel and unusual punishment." ECF No. 13 at 2–3. Subsequently, when screening the amended complaint, the court merely permitted Parrilla to substitute Rodriguez as the Jane Doe defendant named in the original complaint. ECF No. 21.

Parrilla's motion to clarify now argues that he "doesn't believe that allegations already alleged . . . should be ruled out at the screening stage or summary judgment stage if they were properly alleged." ECF No. 61 at 2. But that is precisely the determination that the court made at the screening stage: Parrilla had not properly alleged an Eighth Amendment claim regarding Beahm's allegedly harassing actions not involving Parrilla's food trap, so the court dismissed those claims. Parrilla's motion to clarify will therefore be denied, and the court will proceed to address the defendants' motion for summary judgment on Parrilla's remaining claims.

**II. Eighth Amendment Claims Against Beahm, Schouten, and Rodriguez**

"The Cruel and Unusual Punishments Clause of the Eighth Amendment prohibits the 'unnecessary and wanton infliction of pain' on prisoners." *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000) (citing *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976)). An Eighth Amendment claim under § 1983 requires proof of both an objective and

a subjective element: "(1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006) (citing *Matos ex rel Matos v. O'Sullivan*, 335 F.3d 553, 556 (7th Cir. 2003)). "The objective analysis focuses on the nature of the defendants' acts, and whether the conditions [that prisoners] were forced to endure exceeded contemporary bounds of decency of a mature, civilized society." *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994).

When an inmate raises an Eighth Amendment harassment claim, whether the objective element is satisfied turns not on "the actual fear of the victim, but [on] what a 'reasonable' victim would fear." *Dobbey v. Ill. Dep't of Corr.*, 574 F.3d 443, 446 (7th Cir. 2009). Verbally harassing behavior by prison officials can satisfy the objective element of an Eighth Amendment claim, although "most verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment." *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015). Rather, to support an Eighth Amendment claim, a prison official's harassing behavior must approach the level of presenting a genuine threat to the inmate:

> [H]arassment, while regrettable, is not what comes to mind when one thinks of "cruel and unusual" punishment. Nor does it inflict injury comparable in gravity to failing to provide a prisoner with adequate medical care or with reasonable protection against the violence of other prisoners. The line between "mere" harassment and "cruel and unusual punishment" is fuzzy, but we think the incident with the noose and the "evil eyes" falls on the harassment side of the line because *it was not a credible threat to kill, or to inflict any other physical injury*. The case falls well short of *Burton v. Livingston*, 791 F.2d 97, 100–01 (8th Cir. 1986), where a prisoner alleged that a guard pointed a gun at him, cocked it, called him "nigger," and repeatedly threatened to shoot him, or *Irving v. Dormire*, [519 F.3d 441, 449–50 (8th Cir. 2008)], where a prisoner alleged that a guard had threatened to kill him, repeatedly offered a bounty to any prisoner who would assault him, and gave a

7

> prisoner a razor blade with which to assault him. See also *Northington v. Jackson*, [973 F.2d 1518, 1524 (10th Cir. 1992)].

*Dobbey*, 574 F.3d at 446 (emphasis added) (holding that white prison guard's action of hanging a noose visible to several black inmates did not constitute a credible threat amounting to cruel and unusual punishment); *see also Hughes v. Farris*, 809 F.3d 330, 334 (7th Cir. 2015) ("Threats of grave violence can constitute cruel and unusual punishment under the Eighth Amendment.").

Considered in the light most favorable to Parrilla, the undisputed facts suggest that the trap door made a loud sound like a gunshot because the defendants allowed it to fall open without bracing the fall, startling Parrilla. Nonetheless, the court finds that based on these facts no reasonable jury could conclude that a reasonable inmate would perceive the noise as reflecting a threat of grave violence by Beahm, Schouten, and Rodriguez. Opening and closing the food traps is a routine part of the RHU schedule during waking hours, and it not the kind of incessant noise that disrupts sleep and would be independently actionable under the Eighth Amendment. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1422 (7th Cir. 1996). Indeed, the mere act of opening or closing the food trap, even if it creates noise, is an objectively harmless action. Essentially, Parrilla asks the court to subject correctional officers to potential liability for constitutional violations depending only on whether or not the officer braced the fall of a food trap door to prevent it from making any noise. But such meddling with the fine details of prison administration is not the purpose of this court's inquiry. *See Bell v. Wolfish*, 441 U.S. 520, 562 (1979) ("[T]he inquiry of federal courts into prison management must be limited to the issue of whether a particular system violates any prohibition of the Constitution . . . .").

Parrilla argues that focusing on the innocuous nature of any individual occasion on which a defendant allowed the trap door to fall open and make noise misses the larger scope of his claim. He notes that the Seventh Circuit has held that "a condition which might not ordinarily violate the Eighth Amendment may nonetheless do so if it persists over an extended period of time." *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997). Yet compared to *Dixon*, in which an inmate brought a claim challenging the conditions of his confinement in a cell that was so cold ice formed on the walls throughout the winter, the 43 occasions between April and November 2015 when Beahm allegedly created a noise that startled Parrilla (ECF No. 55 at 1) do not reflect a sustained exposure to a condition of confinement posing a serious risk of harm to Parrilla.

Moreover, even if Beahm, Schouten, and Rodriguez were not entitled to judgment as a matter of law on the merits of Parrilla's Eighth Amendment claims, the court also finds that they are entitled to qualified immunity in this case. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Specifically, officials "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional rights, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). A principle is "clearly established" if it has a "sufficiently clear foundation in then-existing precedent," meaning it is "settled law" as "dictated by 'controlling authority' or 'a robust "consensus of cases of persuasive authority."'" *Id.* at 589–90 (first quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam); then quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741–42 (2011)). This demanding standard extends

9

qualified immunity to "all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 208 (2015) (per curiam)). Here, neither Parrilla nor the defendants identify a controlling case or robust collection of persuasive authorities establishing that correctional officers violate the Eighth Amendment by failing to take action to reduce the incidental noise caused by the performance of a routine and necessary part of their job. Nor has the court identified any authorities establishing such a legal principle.

Parrilla argues that the Eighth Amendment's prohibition on cruel and unusual punishment as described in cases such as *Whitley v. Albers*, 475 U.S. 312 (1986), *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Hope v. Pelzer*, 536 U.S. 730 (2002), as well as the availability of a failure to protect claim, clearly prohibited Beahm, Schouten, and Rodriguez from allowing the food trap to open and make noise after he told them that it exacerbated his mental illness, particularly his PTSD. However, the Supreme Court has "repeatedly stressed that courts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590 (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)). The fact that prison officials are prohibited from violating the Eighth Amendment, inflicting cruel and unusual punishment, and showing deliberate indifference to serious risks to inmate health and safety does not establish that Beahm, Schouten, and Rodriguez acted unreasonably by opening Parrilla's food trap in a manner that permitted it to make a noise that startled him. Therefore, Parrilla's Eigth Amendment claims against Beahm, Schouten, and Rodriguez will all be dismissed.

Following the completion of briefing on the defendants' motion for summary judgment, Parrilla submitted a motion seeking leave to supplement the summary judgment record. ECF No. 62. His motion explains that he has learned that an attorney representing another inmate housed in the RHU at the same time as him possesses video that Parrilla believes depicts the defendants closing the trap doors in the RHU in a harassing manner. However, the court has determined that the act of opening and closing these trap doors in a manner that creates noise does not present an objectively serious risk of harm to inmates and therefore cannot support a claim under the Eighth Amendment. Because this new video evidence therefore would not change the court's decision to dismiss Parrilla's Eighth Amendment claims against Beahm, Schouten, and Rodriguez, Parrilla's motion to supplement will be denied as moot.

### III. Eighth Amendment Failure to Protect Claim Against Waller

In addition to his claims directly against Beahm, Schouten, and Rodriguez, Parrilla contends that Waller violated the Eighth Amendment by failing to protect him from their allegedly cruel and unusual punishment. To prove Waller's liability for failing to protect him, Parrilla "must establish: (1) that he was 'incarcerated under conditions posing a substantial risk of serious harm' and (2) that the defendants acted with 'deliberate indifference' to his health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). However, the court's finding above that no reasonable jury could conclude that the actions of Beahm, Schouten, and Rodriguez violated the Eighth Amendment precludes Parrilla from proving the first element of a failure to protect claim against Waller. Here, "there was no constitutionally impermissible failure to intervene [by Waller] because there was no violation that compelled

11

intervention." *Fillmore v. Page*, 358 F.3d 496, 505–06 (7th Cir. 2004). Parrilla's Eighth Amendment Claim against Waller will therefore also be dismissed.

**IV. First Amendment Retaliation Claim**

Finally, Parrilla advances a First Amendment claim asserting that Beahm unconstitutionally retaliated against him for filing offender complaints by issuing him a conduct report in January 2016. To succeed on his retaliation claim under the First Amendment, Parrilla must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). If the plaintiff makes that showing, then the court must determine whether the defendant has "shown by a preponderance of the evidence that [he] would have reached the same decision . . . even in the absence of the protected conduct." *Green v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 US. 274, 287 (1977)).

There is no dispute that Parrilla filed multiple inmate complaints against Beahm during his time in the RHU. DPFOF ¶ 8. Beahm does not appear to contest that Parrilla's act of filing inmate complaints constituted protected First Amendment activity or that receipt of a conduct report could impose a deprivation likely to deter similar activity in the future. Instead, Beahm focuses on the third element, arguing that Parrilla speculates about but cannot prove the existence of a causal connection between Parrilla's filing of complaints against Beahm and the January 2016 conduct report that Beahm issued to him. On a retaliation claim, speculation regarding a defendant's allegedly retaliatory motives cannot create a genuine issue of material fact sufficient to survive a motion for summary

judgment. *Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013) (citing *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008)).  Parrilla argues that the timing of the January 2016 conduct report alone proves causation in light of the series of events that preceded it: Parrilla had filed complaints about Beahm in the past, Beahm had threatened to issue him conduct reports while he was in the RHU, and Beahm then issued him a conduct report just weeks after he was released from the RHU.  However, "timing alone is insufficient to establish a genuine issue of material fact to support a retaliation claim."  *Springer v. Durflinger*, 518 F.3d 479, 485 (7th Cir. 2008) (quoting *Brown v. Ill. Dep't of Nat. Res.*, 499 F.3d 675, 685 (7th Cir. 2007)).  Because Parrilla presents no evidence of causation apart from this speculation based on timing, his retaliation claim against Beahm will also be dismissed.

## CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment (ECF No. 38) is **GRANTED**, Parrilla's motion in opposition to defendants' summary judgment motion (ECF No. 46) is **DENIED**, Parrilla's motion to clarify (ECF No. 61) is **DENIED**, and Parrilla's motion to supplement the record (ECF No. 62) is **DENIED** at moot.  The Clerk is directed to enter judgment for the defendants.

Dated this 3rd day of August, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
